**United States Bankruptcy Court**
**Northern District of Illinois**
**Eastern Division**

| | |
|---|---|
| **In Re: James & Rita Malec** ) | |
| ) | **Chapter 13** |
| **Debtor(s)** ) | **Judge Janet S. Baer** |
| ) | **Case # 12-30867** |

To: By Mail, BankFinancial, FSB, Mail Processing Center, 6415 W. 95th Street
Chicago Ridge, Illinois 60415

BankFinancial, FSB , c/o Crowley & Lamb, P.C., Attn: Francis J. Pendergast , 221 N. LaSalle Street, Suite 1550, Chicago, IL 60601

By Electronic Notice, Trustee Tom Vaughn, ecf@tvch13.net

    Please take notice that on August 01, 2013 at 9:30 a.m. I shall bring the above motion for hearing before Judge Janet S. Baer or whomever is sitting in Judge Janet S. Baers' stead, in Courtroom 615 at 219 S. Dearborn Street, Chicago, Illinois 60604.

---

**Certification**

    I certify that the motion and notice of motion were served by mail to the parties listed on the attached service list by depositing copies in envelopes addressed to each party with proper postage in the United States mail on July 17, 2013 and by electronic notice through ECF at the above email address on July 17, 2013.

    /s/ Derek V. Lofland
    Derek V. Lofland, Attorney for Debtor
    Gleason and Gleason LLC
    77 W Washington, Suite 1218
    Chicago, IL 60602
    Ph: (312) 578-9530
    Fax: (312) 578-9524

United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In Re: James & Rita Malec ) | |
| ) | Chapter 13 |
| Debtor(s) ) | Judge Janet S. Baer |
| ) | Case # 12-30867 |

**MOTION TO ALTER OR AMEND JUDGMENT / ORDER ON COST OF COLLECTIONS FOR BANKFINANCIAL FSB (DOCKET #71 AND #72)**

Now comes Counsel for James and Rita Malec, Gleason and Gleason LLC, and respectfully states:

1. The Debtors filed a petition under Chapter 13 of the U.S. Bankruptcy Code on August 02, 2012.

2. This Honorable Court has jurisdiction pursuant to §157 and §1334 of Title 28, United States Code.

3. This is a core proceeding within the meaning of §157(B)(1) and (2) of Title 28, United States Code.

4. Venue is proper pursuant to 28 USC §1409.

5. Debtors' Chapter 13 plan was confirmed on June 27, 2013.  Debtors are to make plan payments of $1885.00 for 6 months and payments of $1,904.00 per month for 54 months paying their unsecured creditors 100% of their allowed claims, plus 3.5 percent interest.

6. This Court issued a Memorandum Opinion awarding reasonable costs of collections to BankFinancial FSB (Creditor) in the amount of $10,000.00.  $5,000 was for the cost of collection with respect to Bank Financial FSB's attorney fees in protecting its claim on 4540 Heartland Drive (Claim 4) and the other $5,000.00 was for the cost of collection with respect to Bank Financial FSB's attorney fees in protecting its claim on 4554 Heartland Drive (Claim 3).

7. In the Memorandum Opinion, it states that the reason this case ultimately involved at least nine continued confirmation hearings and six versions of the Plan before it was

1

confirmed are as follows: (1) errors in the original proofs of claim; (2) failure of the Debtors to remain contractually current on plan payments, (3) failure of the Debtors to initially seek use of cash collateral; and (4) failure of the Debtors to originally address the maturity of the Bank's loans.

8. Debtors believe the conclusion of the Court is that both sides were responsible for this drawn out confirmation process, which is the reason that it awarded $10,000 in attorney fees to the Creditor. Debtors do not believe this memorandum opinion paints an accurate picture of what happened in this case and would like the opportunity to explain to the Court why confirmation of this plan took so long in the hopes that this Court will reconsider the $10,000 awarded to Creditor in this opinion.

## **Nine Confirmation Hearings & Six Modified Plans**

9. The first issue that was brought up in the Memorandum Opinion is that nine confirmation hearings and six modified versions contributed to the delay.

10. Below is a chart that shows the nine confirmation hearings, what matters were up at those hearings and what matters were continued to the next date:

| Conf. Hearing # | Date | Matters Up | Result or Reason Continued |
|---|---|---|---|
| 1 | 11/01/12 | a) Application for Attorney Compensation<br>b) Creditor Objection to Confirmation | a) continued to 12/13/2012<br>b) continued to 12/13/2012 |
| 2 | 12/13/12 | a) Application for Attorney Compensation<br>b) Creditor Objection to Confirmation<br>c) Debtors' Objection Claim 2 of Cook County<br>d) Trustee Motions to Dismiss for failure to make plan payments<br>e) Trustee Motions to Dismiss for Failure to File Required Documents under Section 521<br>f) Trustee Motions to Dismiss for Unreasonable Delay | a) continued to 01/31/2013<br>b) continued to 01/31/2013<br>c) Withdrawn<br>d) Withdrawn<br>e) continued to 01/31/2013<br>f) continued to 01/31/2013 |
| 3 | 01/31/13 | a) Application for Attorney | a) continued to 02/21/2013 |

| | | | |
|---|---|---|---|
| | | Compensation<br>b) Creditor Objection to Confirmation<br>e) Trustee Motions to Dismiss for Failure to File Required Documents under Section 521<br>f) Trustee Motions to Dismiss for Unreasonable Delay<br>g) Creditor's Motion to Modify Stay on 4540 Heartland (Claim 4) | b) continued to 02/21/2013<br>e) Withdrawn<br>f) continued to 02/21/2013<br>g) continued to 02/21/2013 |
| 4 | 02/21/13 | a) Application for Attorney Compensation<br>b) Creditor Objection to Confirmation<br>f) Trustee Motions to Dismiss for Unreasonable Delay<br>g) Creditors' Motion to Modify Stay on 4540 Heartland (Claim 4)<br>h) Creditor Motion to Dismiss for Unreasonable Delay. | a) continued to 03/07/2013<br>b) continued to 03/07/2013<br>f) Withdrawn<br>g) continued to 03/07/2013<br>h) continued to 03/07/2013<br><br>**\*From this date forward, no trustee motions to dismiss or trustee objections to confirmation.** |
| 5 | 03/07/13 | a) Application for Attorney Compensation<br>b) Creditor Objection to Confirmation<br>g) Creditors' Motion to Modify Stay on 4540 Heartland (Claim 4)<br>h) Creditor Motion to Dismiss for Unreasonable Delay.<br>i) Debtor's Motions for Cash Collateral (scheduled for 03/14/2013). Debtors' attorney's initial plan was to continue all matters for a week, but Creditors' attorney thought a longer continuance would be better to resolve Claim 4. | a) continued to 04/02/2013<br>b) continued to 04/02/2013<br>g) Withdrawn<br>h) continued to 04/02/2013<br>i) Continued to 04/02/2013 – Debtors' attorney to re-notice 03/14/13 motions for 04/02/13. |
| 6 | 04/02/13 | a) Application for Attorney Compensation<br>b) Creditor Objection to Confirmation<br>h) Creditor Motion to Dismiss for Unreasonable Delay.<br>i) Debtors' Motions for Cash Collateral<br>j) Debtors' Motion to Object to Claim 4. | a) continued to 05/02/2013<br>b) continued to 05/02/2013<br>h) continued to 05/02/2013<br>i) continued to 05/02/2013 – Creditor's attorney not present. Judge let's Debtor's attorney know to inform Creditor's attorney he should file a response on Cash Collateral Motions not later than 04/25/13.<br>j) continued to 05/02/2013 |

| | | | |
|---|---|---|---|
| 7 | 05/02/13 | a) Application for Attorney Compensation<br>b) Creditor Objection to Confirmation<br>h) Creditor Motion to Dismiss for Unreasonable Delay.<br>i) Debtor's Motions for Cash Collateral<br>j) Debtors' Motion to Object to Claim 4. | a) continued to 05/16/2013<br>b) continued to 05/16/2013<br>h) continued to 05/16/2013<br>i) Granted - Motion for Cash Collateral entered on both properties.  Creditor never filed a response to Motion.<br>j) continued to 05/16/2013 |
| 8 | 05/16/13 | a) Application for Attorney Compensation<br>b) Creditor Objection to Confirmation<br>h) Creditor Motion to Dismiss for Unreasonable Delay.<br>j) Debtors' Motion to Object to Claim 4.<br>k) 2 Creditor cost of collection motions. | a) continued to 06/27/2013<br>b) continued to 06/27/2013 – Creditor's attorney would not withdraw; said plan is now unfeasible.  Ordered to file an amended objection by 06/06/2013, because current one filed on 10/25/2012.<br>h) continued to 06/27/2013<br>j) Withdrawn – Creditor filed amended Claim 4 on 05/08/2013 to resolve motion.<br>k) Continued to 06/27/2013 – Debtors' attorney ordered to file a response no later than 06/06/2013.<br><br>**\*All Matters that were continued to 06/27/12 are for a contested confirmation.** |
| 9 | 06/27/13 | a) Application for Attorney Compensation<br>b) Creditor Objection to Confirmation<br>h) Creditor Motion to Dismiss for Unreasonable Delay.<br>k) 2 Creditor cost of collection motions. | a) Granted<br>b) Denied<br>h) Moot<br>k) Taken under advisement |

11. Below is a chart that shows the six modified plans and what the major changes were to those plans:

| Plan # | Date | Terms | Changes from last plan |
|---|---|---|---|
| 1 | 08/02/12 | $1,855.00 per month for 60 months; pays unsecured creditors 100% of their allowed claims. | Original Plan |
| 2 | 02/18/13 | $1,855.00 per month for 6 months and $1904.00 for remaining 54 months; pays unsecured creditors 100% of their allowed claims plus 2% interest. | 1) Treats Claim 3 of Creditor differently than original plan, moves from E (5) to E (3) of the plan. 2) Amends Claims of Cook County so that their property taxes paid in E (3) match their proofs of claim. 3) Amends E (5) of the plan to pay Creditor $11,490.34 instead of $11,290.25 in Original Plan. Had to estimate overstatement of escrow in Claim 4-2, because Creditor won't amend and Debtors don't have exact escrow breakdown. Debtors hadn't received statements from Creditor for at least a year prior to filing. 4) Adds language to Section G on when the Trustee starts paying Claim 3 in the plan and when Debtor becomes responsible for real estate taxes on property that Claim 3 has lien (4554 Heartland). 5) Gives general unsecured creditor 2% interest on unsecured claims. |
| 3 | 05/01/13 | $1,855.00 per month for 6 months and $1904.00 for remaining 54 months; pays unsecured creditors 100% of their allowed claims plus 2% interest. | 1) Amends E (5) of the plan to pay Creditor $11,719.24 on Claim 4. Creditor has not amended claim yet, but that is amount agreed upon. 2) Plan also inadvertently says in Section A (1) that Debtor has $3,942.00 in disposable income. That is a change from the $1885.00 that was listed in previous plan. |
| 4 | 05/15/13 | $1,855.00 per month for 6 months and $1904.00 for remaining 54 months; pays unsecured creditors 100% of their allowed claims plus 2% interest. | 1) Fixes the inadvertent mistake in the last plan to Section A (1) income so that shows $1904.00 left at end of the month. |

5

|   |   |   |   |
|---|---|---|---|
|   |   |   | 2) Also amends income and expenses down, because Debtors had lost some rental income on their properties in the spring of 2013. |
| 5 | 05/29/13 | $1,855.00 per month for 6 months and $1904.00 for remaining 54 months; pays unsecured creditors 100% of their allowed claims plus 2% interest. | 1) Fixes the Section A (1) income so matches the amended Schedule I & J.<br><br>2) Changes to I & J were made, because Creditor wanted maintenance expenses broken down by property.  Also property taxes had changed since original filing, so amended those numbers. |
| 6 | 06/05/13 | $1,855.00 per month for 6 months and $1904.00 for remaining 54 months; pays unsecured creditors 100% of their allowed claims plus 3.5% interest. | 1) Fixes the Section A (1) income so matches the amended Schedule I & J.<br><br>2) Per conversation with trustee, amended E (9) of the plan to increase interest to unsecured creditors from 2% to 3.5 percent. |

12. There are three themes that come out of these charts that the Court needs to consider. One, that the case was progressing at a normal rate until the March 7, 2013 confirmation hearing when things suddenly came to a halt and there were four confirmation hearings where little to nothing was accomplished due to an incorrectly filed Claim 4 that was not amended.  Second, that even though there were six modified plans; the objecting Creditor was paid properly by the third modified plan.  The other amendments were cosmetic in nature, did not impact the Objecting Creditor and were caused by amendments to Schedules I & J that the Creditor requested that caused small changes to the plan.  Third, the Cook County Treasurer's Office had five property tax bills that were being paid in E (3) of the plan, but they were properly treated by the second filed plan.  The reason is that unlike Creditor, they were able to file a proper proof of claim and Debtor was able to file a plan that properly paid their claims.  Had Creditor done the same as Cook County, Debtor would have done the same for them and there would never have been this lengthy delay.

13. This is not a situation where it took the Debtors six times to properly treat the claims.  All claims of all secured creditors were properly paid in the second modified plan and all subsequent modified plans.  E (5) was corrected for the correct amount in the third plan, because the Creditor finally gave Debtors' attorney the correct number to file in this modified plan.  It was off only $228.90 and would have been correct had Creditor done in October what they were supposed to, instead of waiting until May.

6

14. With the confirmation hearings and plans now laid out, Debtors wish to address each element the court gave when considering why confirmation took so long.

### **Errors in the Proof of Claims**

15. With respect to the errors in the proof of claims, Claim 3 was not corrected until January 24, 2013 and Claim 4 was not correctly filed until May 08, 2013. The incorrect Claim 3 resulted in two continuances to confirmation and the incorrect Claim 4 resulted in eight continuances to confirmation. This constituted the major delay in the case and is the primary reason why confirmation took so long.

16. This was not a normal situation where it was a small or harmless error that delayed confirmation or something the Debtors did that made calculation of the claim impossible. Rather, it was a tactic by the Creditor to delay confirmation of the Chapter 13 plan, because there is no way that a bank and an attorney's office could be that bad at math.

17. The Creditor had an erroneous filed claim (3-1) on October 25, 2012 that asked for post-petition attorney fees in the amount of $2,588.00 in their proof of claim. Creditor did not amend this proof of claim until January 24, 2013.

18. Creditor had filed two erroneous claims (4-1) and (4-2). Claim 4-1 asked for $2,120.00 in post petition attorney fees and $8,937.80 in escrow shortage that the Creditor was not entitled to, because Creditor had not paid the delinquent property taxes to Cook County prior to the bankruptcy being filed. Those delinquent taxes were being paid by the Debtor to Cook County in E (3) of the Chapter 13 plan. Claim (4-2) still included the escrow shortage. These were not small errors; they were claims that asked for large sums of money which Creditor was not entitled. The Debtors were reasonable in not wanting the plan to be confirmed paying these claims; they would have overpaid the case by over $10,000 if they had paid the claims that were originally filed by the Creditor.

19. The idea that an $8,937.80 escrow shortage is being paid in E (3) of the plan should not also be recouped by Creditor is not such a novel legal theory that it should require eight continuances to confirmation to resolve this issue. The idea that a debt should not be paid twice is something that requires minimal legal skill to understand and explain to a client. It does not take great legal skill to realize that post petition attorney fees cannot be guesstimated and put into a proof of claim that pays prepetition claims. These are conversations that takes five minutes to explain to client; not 9 months. This miscalculation and refusal to amend the claim timely was a tactic to delay confirmation.

20. It is also not ethical to have attorney time in a proof of claim that does not match the itemization filed in the cost of collection. On Claim 3, Debtor's attorney calculated the inclusion of $2,588.00 in attorney fees through October 24, 2013. The itemization of charges contained in this Cost of Collection from the filing of the filing of the case through October 24, 2013 only totals up to $2,380.40. That leaves a discrepancy of $207.60 between the itemization in this motion and what was originally included in their proof of claim that was represented to be true and correct to the best of knowledge, information and reasonable belief.

21. The same was true on Claim 4. This claim included attorney fees for $2,120.00 for work in the underlying bankruptcy that was later taken out of an amended proof of claim that was filed on January 24, 2013. Yet in the itemization attached with the cost of collection states there were only $874.50 incurred from the date of filing to October 24, 2012.

22. It is unethical to have numbers for attorney time in a proof of claim that does not match the itemizations filed in the cost of collection. Furthermore, it was very confusing to the Debtor and Debtors' Attorney. Creditor's attorney had a fee in the proof of claim that implied that was their flat fee for work in the bankruptcy case post petition, but then on May 09, 2013 they filed a cost of collection that billed for every court appearance and was different from the proof of claim. Had Debtors' attorney been aware they were going to be billed for continuances that were given for the Creditor's benefit, it would certainly have impacted their decision to agree to continuances for Creditor to amend their proof of claim. Debtors' attorney feels sandbagged by this conduct and does not believe it is ethical for the Creditor to be awarded fees for this confusing and inconsistent billing. It certainly should not be rewarded with the granting of $10,000 in attorney fees.

23. The Memorandum Opinion states that one could speculate that a little less emotion, and a few more cooperative phone calls placed at the proper time, could have resolved many of the matters more effectively than six versions of the plan, nine confirmation hearings and several motions that were filed.

24. Debtors believe that Claim 4 demonstrates how much the Debtors tried to work this out with Creditor and how blatant Creditors refusal was to amend this claim. Debtors' attorney had several phone conversations with Creditor's attorney trying to resolve this. A motion objecting to Claim 4 was filed on April 02, 2013, because no progress had been made on this claim for two confirmation hearings.

25. Debtors' attorney continued to work with Creditor's attorney after the objection was filed, agreed to the correct number and filed a modified plan a week before the Creditor

filed their amended proof of claim. Debtors' attorney then withdrew the motion objecting to Claim 4, thus saving this Court time from having a hearing on this matter.

26. Debtors' attorney felt that it was better to work this out between the parties instead of having an evidentiary hearing on the claim, but it took so long for this to happen, because the Creditor refused to amend the claim for four confirmation hearings. The Debtors should not have to pay for the fees that were incurred as a result of their refusal. Furthermore, Debtors demonstrated how willing they were to work this out as they even amended the plan before the Creditor amended the proof of claim to try and have this case confirmed in a timely fashion. That still was not enough for this Creditor and instead they pursued a new objection to confirmation that was denied for being without merit. Had the court not set this for contested confirmation, confirmation would still be going on; nothing was going to be good enough for this Creditor to agree to confirmation of this plan.

27. Just because Debtors' attorney agreed to continuances does not mean the Debtors are taking responsibility for those continuances. The plan could not be confirmed until the disagreement over Claim 4 was resolved, because the Creditor had an Objection to Confirmation that asked for confirmation to be denied, because E (5) of the plan did not properly pay their erroneous claim. The Creditors refusal to amend Claim 4 was the reason for these continuances, not the Debtors failing to amend the plan.

28. Awarding the Creditor with $10,000 in attorney fees rewards the Creditor for filing incorrect claims, refusing to amend them and intentionally delaying confirmation. It is an unjust result. Furthermore, it punishes the Debtors who tried to work this issue out without the need for court litigation and for agreeing to continuances with the good faith hope that Creditor would agree to do the right thing and amend their claim. Debtors had not received statements from Creditor for a substantial period of time and requests for statements from Creditor to determine the actual arrears were fraught with delays and cryptic documents that made it impossible for Debtor's attorney to determine the arrears without the Creditors attorney.

### **Failure of the Debtors to Remain Contractually Current on Plan Payments**

29. With respect to plan payments, the Debtors failing to commence timely payments did delay confirmation, but did not delay confirmation until June 27, 2013.

30. The Trustee Motion to dismiss for failure to make plan payments was withdrawn on December 13, 2012 and was never an issue again in the case. Debtor was substantially current at every court hearing thereafter. Failure to make timely trustee payments

9

resulted in one continuance only. Debtors were current at all other confirmation hearings.

### Failure of the Debtors to Initially Seek Use of Cash Collateral

31. With respect to the failure of the Debtors to initially seek use of cash collateral; this was never something that was contested and was not a major reason that confirmation was not able to proceed. Debtors initial response to the objection to confirmation filed on February 27, 2013 asserted that the cash collateral motions were not necessary. No reply was filed by the Creditor. Debtors then decided to file them to appease the Creditor. Those motions were first up on March 14, 2013, but because there were issues with Claim 4, they were continued with several confirmation hearings with no activity.

32. At the April 04, 2013 hearing, the Creditor's attoreny requested Debtor continue this motion, as their attorney could not appear. The Court requested that Creditor file a response to the motion no later than April 25, 2013. The Creditor never filed a response and the Cash Collateral Orders were entered on May 01, 2013. These motions were never contested; it is debatable that they delayed confirmation, seeing there was no argument by either side about these motions.

33. There was basically no urgency by either side to resolve this issue, because the disagreement over the proof of claims was the main item holding up confirmation. These Motions were entered prior to the Creditor filing their amended proof of claim. Even if these motions had been filed earlier, the case would still not have been confirmed until June 27, 2013, because of the issues with the proof of claim for Claim 4-1.

### Failure of the Debtors to Originally Address the Maturity of the Bank's Loans

34. With respect to the failure of the Debtors to originally address the maturity of the Bank's loans, the February 18, 2013 plan resolved this issue. This problem was resolved after three continuances to confirmation, but Debtors was unable to fix this problem until the Creditor filed a correct proof of claim on January 24, 2013, which was after two confirmation hearings had passed.

35. Debtors' original plan made this factor an issue, but Creditors inability to file an accurate claim contributed to the delay. Furthermore, the case could not be confirmed on February 18, 2013, because Creditor's Claim 4 was still inaccurate.

**Summary of Reasons for Delay**

36. To summarize, failure to make current payments resulted in one continuance. Failure to address the lien of Claim 3 resulted in three continuances, because of Creditor's incorrect proof of claim. The motion for Cash Collateral could have been resolved as early as March 14, 2013 and was never a motion that was contested by the Creditor. Debtor tried to timely resolve issues that were holding up confirmation and did nothing to intentionally delay confirmation of the Plan. Creditor failing to amend Claim 4 resulted in seven continuances to confirmation. The eighth continuance was given for Creditor to file an objection to confirmation, which was denied. The Creditor's inability to file a truthful and accurate claim was the single most important factor in the delay to confirmation.

**Ramifications of this Decision in Future Cases**

37. Awarding $10,000 in attorney fees in this case creates some detrimental precedents for Debtors and Debtors' attorneys.

38. First, it sends a message to Creditors that amounts on their claims do not matter and that signing a proof of claim under penalty of perjury does not matter. It lets them know that they can file an erroneous claim, refuse to amend it for eight months and watch the attorney fees accrue to the detriment of the Debtor. It sends a message that the quality of one's work is not considered when awarding attorney fees. It also needs to be considered that the attorney fees asked for in the proof of claim and the itemization of fees they submitted to the court did not match. In the case of Claim 3 there was a $207.60 discrepancy and on Claim 4 there was a $1,244.50 discrepancy. There are serious ethical issues with this type of billing; it should be sanctioned by the Court, not rewarded with $10,000.00 in attorney fees.

39. Second, it creates an unjust result. The attorney fees the Creditor was requesting in their proofs of claim totaled $4,708.00. It gave the appearance this would be their rate for representation in the entire case. The Debtors objected to those being included in the proof of claim and were right to do so; they should have been included in a cost of collections, not the proof of claim. Yet, by doing so, it contributed to delaying confirmation of the plan and the result is now $10,000 in attorney fees or more than double what they had put in their proof of claim.

40. If attorney fees of this magnitude are going to be awarded, it will encourage creditors to overstate their proof of claim and will discourage Debtors from objecting to these unwarranted charges, because the risk in objecting to the proof of claim is being hit with

11

a much larger attorney bill for delaying confirmation.  This ruling makes it more expensive to make sure the Creditor files a correct proof of claim than it is to just pay them what they want.

41. Third, this ruling sets a precedent that Debtors' attorneys cannot agree to continuances anymore, because if they do they are opening their client up to large sums of attorney fees.  Just because Debtors' attorney agreed to a continuance does not mean that the Debtors agreed that the continuance was needed because they were not ready to proceed.  Continuances are a professional courtesy to allow the other side to fix things that are holding up the case.  However, if the Debtor is going to be billed for the Creditor refusing to fix their mistakes, it creates a situation where a Debtor's attorney cannot agree to a continuance for fear that his or her client will be hit with a large bill for this professional courtesy.  Debtors believe the Court focused too much on the number of continuances versus which party's conduct was responsible for those continuances when awarding these fees.

## **Conclusion**

42. This case was on track for a normal confirmation for the first four confirmation hearings.  Debtors had failed to make timely payments to the Trustee, had not turned over all documentation and had not made all the necessary amendments.  These are things that are typical in many confirmation hearings.

43. Beginning in March of 2013, there were multiple continuances where nothing was accomplished since the last confirmation hearing, because Creditor refusing to amend their claim or withdraw their objection to confirmation so that the case could be confirmed.   It was a tactical decision by Creditor to delay confirmation.

44. Creditor's attorney performed a lot of work in this case, but it was work created by their own mistakes and tactical decisions, not the Debtors' delay.

45. The mistakes were that they could not file correct claims; the tactical decision was that they refused to amend them and continued to pursue objections to confirmation for the Debtor not amending the plan to properly treat these incorrect claims.  As a result, this went from a normal Chapter 13 case with a couple rental properties to a 10 month ordeal that wasted hours of time for the Debtors' attorney and the Court.  Their work was not of such quality that it would warrant $10,000 in compensation.

46. Debtors needed a working and cooperative partner to file accurate claims so that they could propose a plan to pay Creditor.  Instead, Debtors had a Creditor whose attorney

either did not know how to prepare a proof of claim correctly or was going to delay confirmation for as long as possible with the hope that something would go wrong and the case would be dismissed. The result was a drawn out confirmation process, but the result is also that the Debtors are now $10,000 poorer due to the conduct of the Creditor and their attorney.

47. Debtors would ask the court to reconsider Creditors fees. Debtor believes that Creditor should receive $1,500.00 on its cost of collection for Claim 3-1 and $0.00 on its cost of collection for Claim 4-1. Debtor believes that the Creditor's handling of Claim 4-1 was so egregious and the delay it caused was so severe, they should not be able to charge any fees for collecting on this claim to the Debtors. The original plan only underpaid this claim by $428.99; there is no reason that it should have taken eight confirmation hearings and 10 months to put a claim on file that accurately reflected what was owed on this claim. There is no reason they should be able to charge the Debtors for court hearings that were not necessary had they been able to do math properly and timely.

WHEREFORE, Debtors pray that this Court enter an order reducing the Cost of Collection for Creditor to $1,500.00 on Claim 3 and $0.00 on Claim 4, and any further relief that this court deems just and proper.

Respectfully Submitted,

/s/ Derek V. Lofland
One of Attorneys for Debtor

Gleason and Gleason LLC
Attorney for Debtor
77 W. Washington, Suite 1218
Chicago, IL 60602
Ph (312) 578-9530
Fax (312) 578-9524
Julie Gleason #6273536
Troy Gleason #6276510
Derek Lofland #6280490
Meaghan Doyle #6296278